UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

SUBIR BARUA,

                          Plaintiff,               **MEMORANDUM & ORDER**
                                                            14-CV-5107 (MKB)

                           v.

NAYAN BARUA, BANGLADESH BUDDHIST
VIHARA OF NEW YORK, CITY OF NEW YORK,
POLICE OFFICER ASHANA KELLY, and JOHN
DOES 1–10,

                          Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Subir Barua commenced the above-captioned action on August 28, 2014 against Defendants Nayan Barua ("Defendant Barua"), Bangladesh Buddhist Vihara of New York ("BBVNY"), the City of New York, Police Officer Ashana Kelly, and John Does #1–10. Plaintiff brings claims against the City of New York and New York Police Department ("NYPD") Officers pursuant to 42 U.S.C. §§ 1983, 1988 alleging violations of his civil rights,[1] and pursuant to New York state law for negligent hiring, training, supervision and retention.

---

[1] Plaintiff alleges claims pursuant to the "Fourth [F]ifth, Eighth and Fourteenth Amendments." (Compl. ¶ 1.) He brings specific "counts" pursuant to Section 1983 "and 1988" for "deprivation of constitutional rights," false arrest, false imprisonment, malicious prosecution and emotional distress, and a claim pursuant to *Monell* for liability against the City of New York. (Compl. ¶¶ 46–57.) The Court *sua sponte* dismisses Plaintiff's general claim for deprivation of constitutional rights. *See Cramer v. Englert*, 93 F. App'x 263, 264 (2d Cir. 2004) (noting that "credible allegations of state action" and a "specific deprivation of rights" must be alleged as to each defendants to sustain a claim pursuant to Section 1983). Furthermore, Section 1988 is not an independent basis for a cause of action, but rather allows courts to award attorney's fees to the prevailing party in a Section 1983 case. *See* 42 U.S.C. § 1988(b); *Country View Estates @ Ridge LLC v. Town of Brookhaven*, 452 F. Supp. 2d 142, 157–58 (E.D.N.Y. 2006), *report and recommendation adopted at* 452 F. Supp. 2d 142, 144 (E.D.N.Y. 2006).

(Compl. ¶ 1.) Plaintiff also brings New York state law claims against all Defendants, including Defendant Barua and BBVNY, for false arrest, false imprisonment, malicious prosecution, and "infliction of emotional distress." (*Id.*)

On November 20, 2014, Defendant Barua, at that time proceeding *pro se*, filed a motion to dismiss the Complaint on behalf of himself and BBVNY. (Docket Entry No. 10.) The Court held a pre-motion conference on December 5, 2014, and directed the City of New York and Kelly to indicate whether they intended to move to dismiss, and directed Plaintiff to confer with Defendant Barua and BBVNY (collectively, "Movants") as to a briefing schedule. The City of New York and Kelly did not move to dismiss and filed an answer to the Complaint. (Docket Entry Nos. 15, 16.) Plaintiff opposed the motion on December 18, 2014, and Defendant Barua filed a reply in further support of the motion on January 21, 2015.[2] (Docket Entry Nos. 18, 19, 23.) For the reasons discussed below, the Court denies the motion to dismiss.

---

[2] At the time the motion was fully briefed, Defendant Barua was attempting to appear *pro se* on behalf of his corporation, BBVNY. On February 25, 2015, Gillian N. Lewter appeared on behalf of both BBVNY and Defendant Barua. (Docket Entry No. 28.) As Defendant Barua indicated in a letter to the Court that the motion to dismiss was prepared with the assistance of Gillian Lewter, Esq. (Docket Entry No. 11), and Gillian N. Lewter thereafter entered an appearance on behalf of BBVNY and Defendant Barua, the Court construes the motion as being filed by both Defendants, despite the fact that Defendant Barua cannot appear on behalf of BBVNY.

On July 28, 2015, Ms. Lewter filed a motion to withdraw as attorney for Movants and Defendant Barua filed (1) a motion for leave to proceed *in forma pauperis*, (2) a notice of discharge of attorney, signed by him on behalf of himself and BBVNY, and (3) a motion to appoint *pro bono* counsel. (Docket Entry Nos. 38–41.) Defendant Barua requested that the Court remove his prior counsel and appoint *pro bono* counsel because he and his religious corporation, BBVNY, could not afford to pay for their attorney. On August 4, 2015, Magistrate Judge Viktor V. Pohorelsky granted Ms. Lewter's motion to withdraw as attorney, granted Defendant Barua's motion to proceed *in forma pauperis*, granted the application for the Court to request counsel for Defendant Barua, and stayed proceedings in the action for forty-five days in order to permit BBVNY to obtain new counsel. (Docket Entry No. 46.)

## I. Background

Defendant Barua is the president of BBVNY, a religious corporation in Richmond Hill, New York. (Compl. ¶¶ 3–4.) Kelly is an NYPD officer in the 102nd precinct, and John Does #1–10 are other police officers or her supervisors at the NYPD. (*Id.* ¶¶ 6–7.)

In 2009, Plaintiff and "two other individuals" purchased the property located at 87-38 112th Street in Richmond Hill, New York (the "Richmond Hill property"). (*Id.* ¶ 14.) BBVNY and Defendant Barua used the Richmond Hill property and, in 2011, initiated a lawsuit against Plaintiff and the two other owners seeking to have title to the Richmond Hill property transferred to them (the "state court litigation"). (*Id.* ¶¶ 16–17.) BBVNY and Defendant Barua won summary judgment against one of the two unidentified owners in the state court litigation, but Plaintiff and the second unidentified owner maintain a financial stake in the Richmond Hill property and continue to dispute the ongoing litigation. (*Id.* ¶¶ 18–19.)

On April 28, 2014, the New York City Marshal evicted a sub-tenant from the Richmond Hill property. (*Id.* ¶¶ 21–22.) Plaintiff went to inspect the premises after the eviction, did not find a lock on the room where the sub-tenant was staying, and decided to install a new lock. (*Id.* ¶ 23.) While Plaintiff was still at the Richmond Hill property, Defendant Barua called the NYPD and Kelly responded to the scene. (*Id.* ¶ 24.) Defendant Barua told Kelly that Plaintiff had changed the locks on the room. (*Id.* ¶ 25.) Plaintiff alleges that Defendant Barua "falsely" stated that Defendant Barua was the legal custodian of the Richmond Hill property and that Plaintiff did not have permission to enter it. (*Id.*) Plaintiff further alleges that this statement was made intentionally and maliciously with the intent to cause him to be arrested so Defendant Barua and BBVNY could gain an advantage in the state court litigation. (*Id.* ¶ 29.)

Despite his allegation that Defendant Barua and BBVNY had won summary judgment

3

against one of the two unidentified owners of the Richmond Hill property in their lawsuit seeking title, Plaintiff alleges that Defendant Barua did not make any motion, nor was there any proceeding, before the New York State Supreme Court for Defendant Barua to be the legal custodian of the Richmond Hill property. (*Id.* ¶ 26.) Plaintiff claims that he was a record title holder and thus was entitled to be on the premises. (*Id.* ¶ 27.)

Kelly arrested Plaintiff and charged him with obstructing governmental administration under New York Penal Law section 195.05, apparently based on Plaintiff's decision to change the locks on the room and thus interfere with the City Marshal's duties. (*Id.* ¶ 28.) At his arraignment, Plaintiff was served with an order of protection preventing Plaintiff from "visiting or inspecting" the Richmond Hill property, which was still the subject of the state court litigation. (*Id.* ¶ 30.) Plaintiff spent some unidentified amount of time incarcerated,[3] during which time he was "in constant fear for his physical safety." (*Id.* ¶ 41–43.)

On May 28, 2014, Plaintiff moved to dismiss the criminal charges against him. (*Id.* ¶ 40.) The motion was granted on July 18, 2014. (*Id.*) Plaintiff claims that for three months he suffered "stigma, fear, emotional distress, and expense of being a defendant in a criminal prosecution."[4] (*Id.* ¶ 44.)

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept all factual allegations in the complaint as true and draw

---

[3] The Complaint suggests that Plaintiff was incarcerated from his arrest through arraignment, although Plaintiff does not specifically plead when he was arraigned or released. (*See* Compl. ¶ 42.)

[4] Plaintiff does not specify whether he had to appear in court during this time period.

4

inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines*, --- F.3d ---, ---, 2015 WL 4491766, at *2 (2d Cir. July 24, 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)); *see also Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)); *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). A complaint need not contain "detailed factual allegations," but a plaintiff must do more than present "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Matson*, 631 F.3d at 63 (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Pension Ben. Guar. Corp.*, 712 F.3d at 718 (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see also Mastafa*, 770 F.3d at 177.

When deciding a motion to dismiss, a court's review is limited to the four corners of the

complaint, as well as (1) documents attached to the complaint, (2) any documents incorporated in the complaint by reference, (3) any documents deemed integral to the complaint, and (4) public records. *See See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (documents attached to the complaint, those incorporated by reference, and those integral to the complaint); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (documents integral to the complaint); *Sutton ex rel. Rose v. Wachovia Secs., LLC*, 208 F. App'x 27, 29 (2d Cir. 2006) (public records, including petitions and orders of California state court); *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (public records, including state court complaints). However, public records that are not attached to a complaint may only be reviewed in order to determine what statements they contain, and not for the truth of the matter asserted. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Global Network Commc'ns*, 458 F.3d at 157 (noting that public records are properly considered on a motion to dismiss to the extent that they are judicially noticeable, including court documents used to establish the fact of litigation and its filings).

### b. New York state tort claims

Movants, BBVNY and Defendant Barua, seek dismissal of Plaintiff's claims against them, namely the state law torts of false arrest, false imprisonment, malicious prosecution, and "infliction of emotional distress."[5] In the alternative, Movants ask the Court to decline to exercise supplemental jurisdiction over the claims against Movants, as all are brought pursuant to New York State law.

The submissions by both parties include virtually no reference to case law and consist

---

[5] Plaintiff does not specify whether he is seeking recovery for intentional infliction of emotional distress or negligent infliction of emotional distress.

almost entirely of factual disputes, which cannot be resolved at this stage, and unprofessional *ad hominem* attacks.[6] The parties disagree about whether Plaintiff had a legal right to be at the Richmond Hill property, when and how Plaintiff changed the locks on the door, to what extent Defendant Barua had legal control over the Richmond Hill property,[7] and what Defendant Barua intended when he contacted the authorities. For the reasons stated below, the motion to dismiss is denied. The majority of Movants' arguments — and Plaintiff's counterarguments — improperly raise facts which are outside the scope of the Complaint.

### i. Supplemental jurisdiction

Movants argue that because, "in all likelihood[,] the anchoring federal claims" in this action will be dismissed, it is within the Court's discretion to decline to exercise supplemental jurisdiction over Plaintiff's state law claims and dismiss them without reaching the merits. (Def. Mem. 15.)

District courts have supplemental jurisdiction over state law claims "in any civil action of which the district court[] ha[s] original jurisdiction," provided the claims "are so related to claims in the action . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *Montefiore Med. Ctr. v. Teamsters Local*

---

[6] Movants call Plaintiff "foolish and contemptuous," arguing that his arrest was his own fault. Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss contains no law, resorting instead to bald factual assertions and repeated hyperbole. Plaintiff chides Movants for relying on factual assertions outside the scope of the Complaint, and proceeds to attach four exhibits to his motion to dismiss which were not attached to the Complaint and ask that the Court reference those exhibits to resolve the factual disputes in his favor.

[7] Defendant Barua relies heavily on a stipulation of settlement between BBVNY and non-party Maynard Christian and an April 7, 2014 order from Judge Maria Ressos enforcing the stipulation of settlement and ordering Christian's eviction from the Richmond Hill property. (Ex. C–E, annexed to Mot. to Dismiss.) While the Court may take notice of these proceedings, the Court cannot accept the facts as stated therein as true for the purposes of this motion. *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

7

*272*, 642 F.3d 321, 332 (2d Cir. 2011) (noting that federal courts may exercise supplemental jurisdiction when federal claims and state claims "stem from the same 'common nucleus of operative fact'" (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966))). A district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3); *Alliance of Auto. Mfrs., Inc. v. Currey*, --- F. App'x ---, 2015 WL 1529018, at *3 (2d Cir. Apr. 7, 2015) (holding it was "not improper for the court to decline to exercise its supplemental jurisdiction" after it properly dismissed the plaintiff's constitutional claims); *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." (alteration in original) (quoting *Castellano v. Bd. of Trustees*, 937 F.3d 752, 758 (2d Cir. 1991))).

  While Movants claim that it is likely the federal claims in this action will be dismissed, the City of New York, Officer Kelly, and John Doe Defendants have not moved to dismiss the federal claims and the Court will not *sua sponte* address the merits of Plaintiff's federal claims. Movants do not argue that any of the other grounds for declining to exercise supplemental jurisdiction are satisfied, *see* 28 U.S.C. § 1367(c)(1), (2), (4), and thus their motion to dismiss for "lack of supplemental jurisdiction," (*see* Mot. to Dismiss 1), is denied. *See Montefiore Med. Ctr.*, 642 F.3d at 333 (holding that state law claims arising from the same common nucleus of operative fact as claims arising under ERISA, over which the district court had subject matter jurisdiction, were properly subject to supplemental jurisdiction).

### ii. Substantive arguments

#### 1. False arrest and imprisonment[8]

Addressing only the arguments that do not dispute the facts alleged in the Complaint, Movants first contend that there was probable cause to arrest Plaintiff for trespassing and removing the lock installed by the Marshal. (Def. Mem. 11.) Movants further argue that they did not confine Plaintiff, and that merely calling for police assistance does not rise to the level of intending to confine Plaintiff. (*Id.* at 13.) Movants contend that having told the police that Plaintiff changed the lock was insufficient to render them liable for false arrest and imprisonment under New York State law. (*Id.*)

"Under New York law, an action for false arrest requires that the plaintiff show that '(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975)); *Sinagra v. City of New York*, 7 N.Y.S.3d 286, 288 (App. Div. 2015) (citing same for false imprisonment claim); *Petrychenko v. Solovey*, 952 N.Y.S.2d 575, 578 (App. Div. 2012) (citing same for false arrest and false imprisonment claims). Generally, "[a] civilian defendant who furnishes information to law enforcement authorities 'who are then free to exercise their own independent judgment as to whether an arrest will be made and criminal charges filed' will not be held liable for false arrest or false imprisonment." *Petrychenko*, 952 N.Y.S.2d at 578 (quoting *Hendrickson-Brown v. City*

---

[8] Under New York law, false arrest and false imprisonment are largely synonymous, and thus the Court will discuss them as a single cause of action. *Biswas v. City of New York*, 973 F. Supp. 2d 504, 515 (S.D.N.Y. 2013) *appeal dismissed sub nom. Biswas v. Kwait*, 576 F. App'x 58 (2d Cir. 2014); *Mitchell v. Home*, 377 F. Supp. 2d 361, 376 (S.D.N.Y. 2005).

9

*of White* Plains, 938 N.Y.S.2d 331, 332 (App. Div. 2012) and citing *Oszustowiz v. Admiral Ins. Brokerage Corp.*, 853 N.Y.S.2d 584, 586 (App. Div. 2008)); *see also Mitchell v. Home*, 377 F. Supp. 2d 361, 376 (S.D.N.Y. 2005) (collecting cases). A private individual may be held liable for false arrest if he knowingly makes false statement to investigators with the intent of having the plaintiff be arrested or confined, or otherwise gives advice or encouragement to the authorities or importunes them to act. *Harrison v. Samaritan Med. Ctr.*, 9 N.Y.S.3d 495, 496 (App. Div. 2015); *Robles v. City of New York*, 961 N.Y.S.2d 533, 534 (App. Div. 2013); *see also Biswas v. City of New York*, 973 F. Supp. 2d 504, 519 (S.D.N.Y. 2013) *appeal dismissed sub nom. Biswas v. Kwait*, 576 F. App'x 58 (2d Cir. 2014), *as amended* (Aug. 28, 2014); *Anilao v. Spota*, 774 F. Supp. 2d 457, 510–11 (E.D.N.Y. 2011).

Plaintiff alleges that Defendant Barua contacted the NYPD and informed them that (1) Plaintiff changed the locks in the room, and (2) Plaintiff did not have permission to be on the Richmond Hill property, despite knowing that his statements were not accurate. (Compl. ¶¶ 25–29.) He further alleges that Defendant Barua, acting on behalf of BBVNY, intentionally provided this information to the NYPD in order to have Plaintiff arrested and incarcerated and thereby gain an advantage in the state court litigation. (*Id.* ¶ 29.) While sparse, these allegations are sufficient to state a claim for false arrest against Defendant Barua, a private individual. *See Biswas*, 973 F. Supp. 2d at 520 (denying motion to dismiss false arrest claim against two defendants alleged to have supplied false information to the police "while knowing that the plaintiff was actually innocent"); *see also Brown v. Nassau Cty.*, 760 N.Y.S.2d 655 (App. Div. 2003) (affirming denial of summary judgment as to false arrest and malicious prosecution claims because there were issues of fact as to whether defendant "intentionally provided false evidence to the police resulting in the plaintiff's arrest and prosecution").

### 2. Malicious prosecution

Movants contend that they did not act with malice, and that Plaintiff has failed to adequately allege that Movants were not justified in requesting police intervention, because Plaintiff had no lawful right to be at the Richmond Hill property. (Def. Mem. 13–14.) Movants do not dispute that the criminal charges terminated in Plaintiff's favor, and Plaintiff has alleged that the charges were dismissed. (*See* Compl. ¶ 40.)

To sustain a malicious prosecution claim, a plaintiff must established that "[1] a criminal proceeding was commenced or initiated by the defendant; [2] that it was terminated in favor of the accused; [3] that it lacked probable cause; and [4] that the proceeding was brought out of actual malice." *Sinagra*, 7 N.Y.S.3d at 288 (citations omitted); *see Cantalino v. Danner*, 96 N.Y.2d 391, 394 (2001). As for the fourth prong, "actual malice" means acting with "a wrong or improper motive, something other than a desire to see the ends of justice served" or with "awareness of conscious falsity." *Harrison*, 9 N.Y.S.3d at 496 (internal quotation marks and citations omitted); *see also Santoro v. Town of Smithtown*, 835 N.Y.S.2d 658, 660–61 (App. Div. 2007) (dismissing malicious prosecution claim for failure to allege actual malice "i.e. some deliberate act punctuated with awareness of conscious falsity" (internal quotation marks omitted)). Similar to false arrest, a civilian who furnishes information to a law enforcement officer or serves as a witness in a prosecution will not be liable for malicious prosecution unless his involvement goes beyond simply providing information. *Hendrickson-Brown*, 938 N.Y.S.2d at 332; *Wong v. Yoo*, 649 F. Supp. 2d 34, 65 (E.D.N.Y. 2009). However, where a party knowingly provides false information or manufactured evidence that influences a decision to prosecute the plaintiff, he may be liable for malicious prosecution. *See Robles*, 961 N.Y.S.2d at 535; *Lupski v. Cty. of Nassau*, 822 N.Y.S.2d 112, 114 (App. Div. 2006); *see also Wong*, 649 F.

Supp. at 65 (denying summary judgment as to malicious prosecution claim, finding defendant could be held liable for malicious prosecution because he deliberately made false statements to the police about events which led to plaintiff's arrest).

For the reasons discussed above, the facts as alleged establish that Defendant Barua had knowledge of the falsity of the information that he provided to the police and the intention to have Plaintiff arrested and charged with a crime in order to gain an advantage in the state court litigation. Thus, the motion to dismiss the malicious prosecution claim is denied. *See Robles*, 961 N.Y.S.2d at 535 (denying summary judgment as to malicious prosecution claim because there were issues of fact as to whether defendants intentionally provided false information to law enforcement officials, "thereby permitting an inference of actual malice"); *see also TADCO Constr. Corp. v. Dormitory Auth.*, 700 F. Supp. 2d. 253, 275 (E.D.N.Y. 2010) (noting that pleading facts to show a complainant "gave false information [to] or withheld information" from arresting law enforcement official overcomes the presumption of probable cause); *cf. Pacicca v. Stead*, 456 F. App'x 9, 12 (2d Cir. 2011) (noting that a civilian complainant must have a "reasonable basis" for his belief that plaintiff was committing a crime "in order to have the probable cause necessary to defeat a malicious prosecution or false arrest claim" (quoting *TADCO Constr.*, 700 F. Supp. 2d. at 275)).

### 3. "Infliction of emotional distress"

Movants argue that "[i]t is axiomatic that if the claims of false arrest, false imprisonment, and malicious prosecution fail, plaintiff cannot maintain a claim of emotional distress." (Def. Mem. 14.) Plaintiff provides no argument as to this claim, which would typically indicate that Plaintiff has abandoned it. "Indeed, courts in this circuit have held that '[a] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute [*sic*] an abandonment of

those claims.'" *McLeod v. Verizon N.Y., Inc.*, 995 F. Supp. 2d 134, 143 (E.D.N.Y. 2014) (alteration in original) (collecting cases). However, because the Court denies Movants' motion as to the false arrest and imprisonment claims and the malicious prosecution claims, and because Movants have raised almost no argument as to the emotional distress claim, the Court also denies the motion as to the emotional distress claim.

### 4. Liability of BBVNY

Neither party raises arguments as to why BBVNY was named as a Defendant in this action, as Plaintiff's allegations almost entirely relate to Defendant Barua. However, Plaintiff does allege that BBVNY stood to benefit from Plaintiff's arrest by means of unspecified advantage in the state court litigation. The Court understands Plaintiff to be alleging that BBVNY is vicariously liable for Defendant Barua's actions because Defendant Barua, a member of BBVNY, was acting on behalf of BBVNY when he called the police.

In New York, "an employer may be vicariously liable for the tortious acts of its employees only if those acts were committed in furtherance of the employer's business and within the scope of employment." *N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 247, 251 (2002) (citing *Riviello v. Waldron*, 47 N.Y.2d 297, 302 (1979)); *see also Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 161 (2d Cir. 2014) (citing same). This doctrine applies to both intentional torts and negligence, "so long as the tortious conduct is generally foreseeable and a natural incident of the employment." *Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 932, 933 (1999) (citing *Riviello*, 47 N.Y.2d at 304); *Carnegie v. J.P. Phillips, Inc.*, 815 N.Y.S.2d 107, 108–09 (App. Div. 2006). An employer will not be responsible for the torts of an employee who is not acting in furtherance of his employer's business, or who acts only on personal motives. *N.X.*, 97 N.Y.2d at 251–52 (holding that hospital resident's sexual assault of patient was outside the scope of employment);

13

*Judith M.*, 93 N.Y.2d at 933 (holding that hospital orderly's sexual assault of patient was outside the scope of employment); *Adams v. N.Y.C. Transit Auth.*, 88 N.Y.2d 116, 119, 123 (1996) (dismissing action against Transit Authority, finding that employee who assaulted plaintiff was not acting within the scope of her employment); *Naegele v. Archdiocese of N.Y.*, 833 N.Y.S.2d 79, 80 (App. Div. 2007) (dismissing claim sounding in *respondeat superior* against Archdiocese, finding it was not liable for tortious acts of Monsignor because the "conduct, which may be characterized as exercising undue influence, overreaching, fraud or even theft, was not in furtherance of archdiocesan business and was a clear departure from the scope of his employment, having been committed for wholly personal motives" (citation omitted)); *see also Turley*, 774 F.3d at 161 ("Because it is usually motivated by something personal, harassment, however egregious, ordinarily does not fall within the scope of employment.") Whether an employee was acting within the scope of his employment is a fact-dependent inquiry typically left the jury. *Golodner v. Quessant Inc.*, No. 05-CV-7895, 2007 WL 2844944, at *4 (S.D.N.Y. Sept. 27, 2007).

Plaintiff's only allegations as to BBVNY are that it is a religious corporation with an address at the Richmond Hill property, (Compl. ¶ 4), that it occupies the Richmond Hill property, (*id.* ¶ 16), that Defendant Barua and other members of BBVNY caused BBVNY to initiate the state court litigation, which was based on a "forged document" and is ongoing, (*id.* ¶¶ 17–20). Plaintiff further alleges that Defendant Barua made false statements to the police in order to gain advantage for himself and BBVNY in the state court litigation. (*Id.* ¶ 29.) Plaintiff also alleges in a conclusory fashion that his arrest and prosecution were "put into motion by [D]efendants Nayan Barua and BBV[NY] . . . ." (*Id.* ¶ 47.) It is unclear from the facts presented whether Defendant Barua was acting within the scope of his employment when he called the

14

police, or whether he was acting based on personal motives or tending to the Richmond Hill property in a way that was unrelated to BBVNY's business. *See Lomonaco v. Lomonaco's Landscaping, Inc.*, 732 N.Y.S.2d 434, 434–35 (App. Div. 2001) (holding landscaping company not vicariously liable for president of company's actions because he was performing landscaping work for the plaintiffs as a personal favor and was not acting as an agent for the landscaping company). However, Plaintiff has alleged that Defendant Barua acted with intent to benefit BBVNY, and Movants concede that Defendant Barua, as a member of BBVNY, was acting "as the President of BBVNY" and caretaker of the Richmond Hill property when he called the police. (Compl. ¶ 29; Def. Mem. 14; Def. Reply Mem. 4.) Thus, the Court finds that Plaintiff has alleged sufficient facts that, if true, could result in BBVNY being held vicariously liable for Defendant Barua's actions. *Cf. N.X.*, 97 N.Y.2d at 251–52; *Lomonaco*, 732 N.Y.S.2d at 435. The Court therefore denies BBVNY's motion to dismiss Plaintiffs claims against it.

### III. Conclusion

For the foregoing reasons, the Court denies Movants' motion to dismiss.

SO ORDERED:

    s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: August 18, 2015
       Brooklyn, New York